# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DONOVAN M. BURRIS,**

        Petitioner,

        -vs-                              Case No. 12-cv-00465-RTR

**MICHAEL BAENEN, Warden,**
**Green Bay Correctional Institution**

        Respondent.

# DECISION AND ORDER

The Petitioner, Donovan M. Burris ("Burris"), is an inmate at Green Bay Correctional Institution. A Milwaukee County circuit court convicted Burris of first degree reckless injury and possession of a firearm by felon, in violation of Wis. Stat. §§ 940.23(1) and 941.29(2)(a), respectively. Burris was sentenced to fifteen years of imprisonment on count one and three years of imprisonment on count two.

Burris contends that the jury applied a supplemental instruction in an unconstitutional manner, (Br. Supp. Pet. 2) (ECF No. 17), and the state courts have addressed his claim. The state court of appeals reversed Burris' conviction, finding "a reasonable likelihood that the trial court's [supplemental jury instruction], offered in response to the jury's specific question, misled the jury." *State v. Burris*, 323 Wis. 2d 823, 781 N.W.2d 551

(Wis. Ct. App. 2011). On appeal, the Wisconsin Supreme Court reversed the court of appeals' decision, ruling that Burris "ha[d] not established a reasonable likelihood that the jury applied the supplemental jury instruction . . . in an unconstitutional manner." *State v. Burris*, 333 Wis. 2d 87, 797 N.W.2d 430, 434 (Wis. 2011). It remanded the case to the court of appeals for adjudication of Burris's other claims.

Burris filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which survived preliminary review by this Court. (Court's May 17, 2012 Decision & Order.) (ECF No. 6.) It was filed in a timely manner after Burris exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A). The question before this Court is whether the Wisconsin Supreme Court relied upon an unreasonable application of clearly established federal law in concluding that Burris failed to demonstrate a reasonable likelihood that the jury unconstitutionally applied the supplemental instruction.

**BACKGROUND**

The Court begins by setting forth the following facts found by the Wisconsin Supreme Court, which are presumed to be correct. Burris visited the mother of his two children, Khadijah Rashada ("Khadijah").[1] *Burris*, 797

---

[1] For clarity's sake, the Court refers to members of the Rashada family by given name.

N.W.2d at 434. An argument ensued during which Burris' pistol discharged and Khadijah's brother, Kamal, was shot in the neck. *Id*.

Both Kamal and Burris offered similar testimony about the events after the shooting. *Id*. at 436. Burris testified that he fell to his knees and held his face in a fit of remorse. *Id*. He asked either Khadijah or her mother, Cathy, to shoot him, and tried to hand over the gun. *Id*. Burris then fled the scene and evaded authorities for five months before turning himself in to police. *Id*. at 434. It was undisputed at trial that the shooting paralyzed Kamal; he remained in the hospital for two months. *Id*.

Burris was charged with first and second degree reckless injury. At trial, the circuit court instructed the jury to consider both charges. To convict a defendant for first degree reckless injury under Wisconsin law, the state needs to prove beyond a reasonable doubt that the defendant recklessly caused great bodily harm to another under circumstances which show utter disregard for human life. Wis. Stat. § 940.23(1). The jury's decision to choose between the first and second degree charges turned on whether Burris displayed "utter disregard for human life."

During deliberations, the jury submitted two questions to the judge concerning after-the-fact conduct as part of the utter disregard determination: "Regarding the element of utter disregard, all other facts and circumstances relating to the incident, do we consider facts and

- 3 -

circumstances after the shooting?" *Burris*, 797 N.W.2d at 436. In a follow-up question, the jury asked more directly, "[s]hould we consider facts and circumstances after the shooting in determining utter disregard?" *Id.* at 449 (Abrahamson, C.J., dissenting).

After consulting with counsel, the circuit court brought the jury back into the courtroom and provided the following supplemental instruction:

> And in response to this question, if this clarifies anything, after-the-fact regard for human life does not negate utter disregard otherwise established by the circumstances before and during the crime. It may be considered by the fact-finder as a part of the total factual picture, but it does not operate to preclude a finding of utter disregard for human life. The element of utter disregard for human life is measured objectively on the basis of what a reasonable person in the defendant's position would have known.

*Id.* at 436.

The jury found Burris guilty of first degree reckless injury. On appeal, Burris challenged the trial court's answer to the jury's utter disregard question, arguing that the correct response was simply, "yes." The lengthier response, according to Burris, confused the jury and implicitly informed them that after-the-fact conduct should be accorded less weight than other types of conduct. (Br. Supp. Pet. 5.) (ECF No. 2.) Burris contended that the supplemental instruction was ambiguous and established a reasonable likelihood that the answer misled the jury. The Wisconsin Supreme Court

- 4 -

ruled against him. Burris' petition challenges the application of federal law by the Wisconsin Supreme Court.

## ANALYSIS

Section 2254 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In order for this Court to grant habeas relief under § 2254, Burris must show that the Wisconsin Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

As a threshold matter, this Court must identify the relevant "clearly established Federal law." To demonstrate constitutional error with a legally accurate jury instruction, Burris "must show both that the instruction was ambiguous *and* that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (internal quotation marks omitted; emphasis added). The instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."

*Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). The consideration of the whole record comports with the reality that jurors "do not sit in solitary isolation booths parsing instructions for subtle shades of meaning." *Boyde v. California*, 494 U.S. 370, 380-81 (1990). Rather, jurors interpret instructions using a "deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting." *Id.* at 381.

The United States Supreme Court places an "especially heavy" burden on the challenger. *Waddington*, 555 U.S. at 190. It is not enough that there is some "slight *possibility*" that the jury misapplied the instruction. *Weeks v. Angelone,* 528 U.S. 225, 236 (2000). Rather, the proper measure is whether the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The burden on the challenger is high, and the United States Supreme Court takes a holistic approach to examining the adequacy of jury instructions.

Burris faults the trial court because its supplemental instruction quoted from an inapplicable "utter disregard" analysis done by the Wisconsin Supreme Court in *State v. Jensen*, 236 Wis. 2d 521, 613 N.W.2d 170 (Wis. 2000). In *Jensen*, a sufficiency of evidence case, the issue was whether after-the-fact conduct could *preclude* a finding of utter disregard. Burris argues

- 6 -

Case 2:12-cv-00465-RTR   Filed 08/03/15   Page 6 of 13   Document 22

that the trial court erred in adopting this language for the instant case because the jury's question was about whether they should *consider* after-the-fact conduct at all. (Br. Supp. Pet. 8.) (ECF No. 2.) According to Burris, phrases within the supplemental instruction explaining that after-the-fact conduct "does not operate to preclude" utter disregard or "does not negate" utter disregard are ambiguous and misleading. (*Id*.)

The Wisconsin Supreme Court conceded that the instruction was "potentially ambiguous." *Burris*, 797 N.W.2d at 446. But it also correctly observed that "[e]ven some 'ambiguity, inconsistency, or deficiency' in an instruction does not violate due process." *Id.* at 443 (quoting *Waddington*, 555 U.S. at 190).

There must also be a reasonable likelihood that the jury misapplied the instruction in an unconstitutional manner. *Waddington*, 555 U.S. at 190-191. Moreover, the wording of the instruction cannot be examined in isolation. *Estelle*, 502 U.S. at 72. The Wisconsin Supreme Court was bound to examine the challenged jury instruction in light of the whole proceeding, including the evidence presented at trial, the initial instruction, the jury's question, and the supplemental instruction.

After-the-fact conduct was central to the trial as a whole. During voir dire, Milwaukee County Assistant District Attorney Thomas Potter made clear that jurors would consider "the circumstances surrounding the

immediate time when the shot was fired from the gun." (Tr. 22.) (ECF No. 15-10.) Before opening statements, Milwaukee County Circuit Court Judge William Sosnay described the jury's duty "to scrutinize and to weigh the testimony of the witnesses and to determine the effect of the evidence as a whole." (*Id.* at 53.) *See also* (*Id.* at 57-58) (Prosecution's preview of Burris's after-the-shooting "hysteri[cs]"); (*Id.* at 84-87) (Kamal's testimony); (*Id.* at 124-126) (Cathy's testimony); (Tr. 60-62) (ECF No. 15-11) (Khadijah's testimony); (Tr. 18-21, 38-40) (ECF No. 15-12) (Burris's testimony); (*Id.* at 82-83) (prosecution's closing argument). Both parties, and every witness, discussed Burris's after-the-shooting conduct, including the aggravating evidence of Burris evading the police and the mitigating evidence of Burris showing remorse for his actions. The result itself — Burris' conviction of first degree reckless injury — and the lack of additional questions from the jury concerning after-the-fact conduct is consistent with the jury considering all the evidence in a holistic approach to fact-finding.

Furthermore, the trial court's closing instructions informed the jurors that they should examine the whole record in making their utter disregard determination:

> In determining whether the conduct showed utter disregard for human life, you should consider these factors: what the defendant was doing; why the defendant was engaged in that conduct; how dangerous the conduct was; how obvious the danger

- 8 -

> was; whether the conduct showed any regard for life; and, *all other facts and circumstances relating to the conduct.*

*Burris*, 797 N.W.2d at 444 (emphasis added). Moreover, before offering the supplemental instruction in dispute, the court provided a disclaimer: "First of all, I want to emphasize that you are to rely on the instructions that I gave you. All right? And to rely on all of the instructions that I gave you." (Tr. 14.) (ECF No. 15-13.) In light of this holistic approach, this Court concludes that the Wisconsin Supreme Court did not unreasonably apply clearly established federal law in concluding that Burris failed to demonstrate a reasonable likelihood that the jury unconstitutionally applied the supplemental instruction.

Burris takes issue with the contextual approach to jury instructions, arguing that the main sources of information about after-the-fact conduct, such as the trial testimony and the language of the original jury instruction, are "trumped" by the supplemental jury instruction. (Pet'r's Reply Br. 4.) (ECF No. 20.) Citing "common sense" and *Bollenbach v. United States*, Burris argues that "the judge's last word is apt to be the decisive word." 326 U.S. 607, 612 (1946) (stating that if the instructions are "a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge"). (Pet'r's Mar. 2013 Br. 4-5.) (ECF No. 17.) But even if the jury considers the supplemental instruction to be the "decisive

word" on the law, as it should, it does not follow that it is the *only* word the jury will consider during deliberations. Such a position runs contrary to Supreme Court doctrine that even instructions, definitive statements on the law, should be understood in context; reasonable jurors would not believe that a court's instructions transformed the rest of the trial into a "virtual charade." *Boyde*, 494 U.S. at 383.

Notably, the supplemental instruction itself exhorts the jury to examine the *whole* record: after-the-fact conduct "may be considered by the fact-finder as a part of the total factual picture." *Burris*, 797 N.W.2d at 436. Even if the jury was sharply focused on the language of the supplemental instruction, it is clear the jury was to examine the proceedings as a whole.

Burris also argues that the supplemental instruction should have been a simple "yes," and that the court ran afoul of the United States Supreme Court's mandate from *Bollenbach* ("[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). 326 U.S. at 612-13. (Pet'r's Mar. 2013, Br. 2.) But the supplemental instruction satisfies the requirement. The instruction was potentially ambiguous, but it was not insubstantial or flimsy. It was concrete, unequivocal, and thorough. It was also an accurate statement of the law, a characteristic lacking in *Bollenbach*. Unlike this case, the trial judge in *Bollenbach* "was not even 'cursorily' accurate. He was simply wrong."

*Bollenbach*, 326 U.S. at 613.

Burris is correct: the jury's question was not whether after-the-fact conduct negated or precluded a finding of utter disregard, but rather whether the jury should *consider* after-the-fact conduct at all. This distinction explains Burris's issue with the court using language from *Jensen*, a sufficiency of evidence case. *Jensen*'s focus is immaterial. What is material are the *words* of the jury instructions that were read to the jury, and it is by those *words* that this Court determines whether the Wisconsin Supreme Court relied upon an unreasonable application of clearly established federal law in concluding that Burris failed to demonstrate a reasonable likelihood that the jury unconstitutionally applied the supplemental instruction. The supplemental instruction answered the question in a concrete fashion and informed the jury of the totality of circumstances approach to fact-finding.

The instruction did not preclude the consideration of constitutionally relevant evidence. *See Boyde*, 494 U.S. at 380. The instruction did not advise the jury that after-the-fact conduct carries less weight than other types of conduct, it simply advised the jury that the existence of after-the-fact mitigating evidence does not automatically negate a finding of utter disregard — a completely accurate statement of current Wisconsin law.

**CONCLUSION**

The burden on Burris to prove that the Wisconsin Supreme Court relied on an unreasonable application of clearly established federal law is high, and Burris has failed to meet it.

Pursuant to Rule 11 of the Rules Governing 28 U.S.C. § 2254 proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The standard "does not require a showing that the appeal will succeed." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). It does, however, require more than a showing of the "absence of frivolity." *Id.* at 338.

Under this standard, having carefully considered the Wisconsin Supreme Court's application of federal law, this Court grants a certificate of appealability: reasonable jurists could debate whether the petition should have been resolved differently.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Burris' petition for a writ of habeas corpus (ECF No. 1) is **DENIED**;

This action is **DISMISSED**;

The Clerk of Court is **DIRECTED TO ENTER JUDGMENT** accordingly;

The Court **GRANTS** Burris a Certificate of Appealability on the issue of whether the Wisconsin Supreme Court relied upon an unreasonable application of clearly established federal law in concluding that Burris failed to demonstrate a reasonable likelihood that the jury unconstitutionally applied the supplemental instruction.

Dated at Milwaukee, Wisconsin, this 3rd day of August, 2015.

                                                   **BY THE COURT:**

                                                   */s/ Rudolph T. Randa*

                                                   **HON. RUDOLPH T. RANDA**
                                                   **U.S. District Judge**